UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 14-CV-4593 (JFB)(ARL)

———————————

DERICK HERNANDEZ,

Plaintiff,

VERSUS

SHERIFF MICHAEL SPOSATO, UNDERSHERIFF HESSE, CAPTAIN FORD, SGT. CURTIN, JOHN DOE,

Defendants.

———————————

**MEMORANDUM AND ORDER**
July 8, 2015

———————————

JOSEPH F. BIANCO, District Judge

Incarcerated *pro se* plaintiff Derick Hernandez ("plaintiff" or "Hernandez") brings this action against defendants Sheriff Michael Sposato ("Sposato"), Undersheriff Hesse, Captain Ford, Sgt. Curtin, and John Doe (collectively, "defendants"), alleging a violation of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff claims that, while he was housed at the Nassau County Correctional Center ("NCCC") pending trial, defendants wrongfully prevented him from any "contact visits" after he was involved in violent altercations with another inmate.

Defendants move to dismiss the complaint on the ground that plaintiff has failed to allege a violation of a constitutionally protected right.[1] For the following reasons, the Court agrees, and grants the motion to dismiss.

I. BACKGROUND

A. Factual Background

The Court takes the following facts from the complaint. These are not findings of fact by the Court; instead, the Court assumes these facts to be true for purposes of deciding the pending motion and construes them in a light most favorable to plaintiff, the non-moving party.

Plaintiff was in detention at NCCC when the events at issue occurred, pending trial in

---

[1] Defendants also argue, *inter alia*, that plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), that his complaint fails to allege a plausible *Monell* claim, and that the individually named prison officials are shielded by qualified immunity. Such issues are moot in light of the Court's ruling that plaintiff has failed to state a plausible claim under Section 1983 and, thus, the Court does not address them.

state court.[2] On or about November 9, 2013, plaintiff alleges that he was involved in a violent altercation with another inmate, Isaiah Johnson, in his housing unit. (Compl. at IV.) Plaintiff alleges that the prison officials intervened, moved plaintiff and Johnson to cells further from each other, and put a "keep separate" order in place. (*Id.*)

Plaintiff then alleges that, on or about November 12, 2013, he was called down to the visit floor for a contact visit. (*Id.*) Approximately twenty minutes after plaintiff was called down to the visit floor, plaintiff alleges Johnson was also brought down by the guards for a visit. (*Id.*) Plaintiff alleges the guards seated Johnson behind plaintiff, and Johnson then punched him from behind, causing plaintiff to turn around to "protect myself." (*Id.*)

Plaintiff alleges that, after the second incident on the visit floor, defendants sent him a letter notifying him that he was restricted from having any further contact visits. (*Id.*) Plaintiff asserts that he has had no contact visits since that incident and that defendants have not responded to his appeals of the restriction;[3] plaintiff asserts this restriction is unjust because defendants precipitated the incident by bringing Johnson to the visit floor when plaintiff was present, despite the fact that they should have been aware a "keep separate" order was in place. (*Id.*)

B. Procedural Background

Plaintiff filed the complaint in this action on July 31, 2014. Defendants moved to dismiss on October 6, 2014. Plaintiff opposed on November 19, 2014, and the defendants replied on December 19, 2014. The matter is fully submitted, and the Court has fully considered the submissions of the parties.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining

---

[2] After plaintiff was tried and convicted in state court in February 2014, he was indicted in federal court on separate charges and is currently pending trial before Judge Joanna Seybert. (*See United States v. Derick Hernandez et al.*, No. 14-CR-00264 (JS).)

[3] The length of the contact visit restriction is unclear—plaintiff appears to assert that he has had no contact visits from the time of the second fight to the filing of the complaint, but also alleges that defendants informed him the restriction would last only "till I leave and return." (Compl. at 2.) For the purposes of the motion, the Court will assume that the restriction lasted at least from November 2013 through July 2014, when plaintiff filed the complaint, but that there was a defined endpoint connected to plaintiff's ongoing criminal case.

2

that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556-57 (internal citation omitted)).

Where, as here, the plaintiff proceeds *pro se*, courts are "'obliged to construe his pleadings liberally.'" *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)); *see also McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (stating that a *pro se* plaintiff's pleadings must be interpreted "to raise the strongest arguments that they suggest" (citation and internal quotation marks omitted)). A *pro se* plaintiff's complaint, while liberally interpreted, still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

III. DISCUSSION

Plaintiff asserts that defendants violated his constitutional rights under Section 1983. To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. Section 1983 does not itself create substantive rights; it offers "a method for vindicating federal rights elsewhere conferred." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).

Plaintiff asserts that defendants' restriction of his contact visits was a violation of his Fourteenth Amendment right to due process.[4] (Pl.'s Opp. at 1-2.) Plaintiff demands injunctive relief (presumably restoring his contact visits), as well as compensatory and punitive damages. (Compl. at V.)

Accepting the factual allegations set forth in the complaint as true and drawing all reasonable inferences in favor of the plaintiff, the Court nonetheless finds that plaintiff has failed to state a plausible claim under Section 1983. Defendants argue that plaintiff has failed to state a claim under Section 1983 because his claim—which solely involves the restriction of his contact visits—does not involve the deprivation of any right, privilege, or immunity secured by the Constitution. (Defs.' Mem., ECF No. 13, at 7-9.) The Court agrees.

---

[4] It is not clear from the face of his complaint which constitutional rights plaintiff asserts were violated by this restriction. However, in plaintiff's opposition to the motion to dismiss, he asserts that, "My [complaint] stated I was barred from having 'contact visits,' which was a 'double jeopardy' punishment because I was never given a sanctioned 'loss of contact visits' from the hearing officer." (Pl.'s Opp., ECF No. 17., at 1-2.) Though plaintiff references the "double jeopardy" provision of the Fifth Amendment, which prohibits an individual from being prosecuted or punished twice for the same offense, the rest of the statement—as well as the assertions made by plaintiff in the complaint with respect to his contact visits being taken away without justification or review—appears to assert a violation of due process caused by defendants' restriction of plaintiff's contact visits. The Court will therefore construe plaintiff's complaint, brought against state officials, as a procedural due process claim under the Fourteenth Amendment.

3

"To establish a claim under the Due Process Clause, a plaintiff must demonstrate that he possesses a constitutionally protected interest in life, liberty, or property, and that state action has deprived him of that interest." *Doe v. Pataki*, 3 F. Supp. 2d 456, 466 (S.D.N.Y. 1998) (citing *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994)). In this case, only plaintiff's purported liberty interest— not any interest in life or property—was affected by the restriction of his contact visits. *See Baskerville v. Goord*, No. 97 Civ. 6413 (BSJ), 1998 WL 778396, at *6 (S.D.N.Y. Nov. 5, 1998). To prevail on this procedural due process claim under Section 1983, plaintiff must show that (1) he possessed a protected liberty interest and (2) defendants deprived him of that interest as a result of insufficient process. *See, e.g.*, *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).

Inmates' liberty interests derive from two sources: (1) the Due Process Clause itself, or (2) state statutes or regulations. *Arce*, 139 F.3d at 333. The Supreme Court, however, "has narrowly circumscribed [the scope of the Due Process Clause itself] to protect no more than the 'most basic liberty interests in prisoners,'" *id.* (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)), limiting it to freedom from restraints that "exceed[] the sentence in . . . an unexpected manner," *Sandin v. Conner*, 515 U.S. 472, 478 (1995). Thus, the Due Process Clause does not protect against an adverse change in an inmate's conditions of confinement so long as the change is "'within the normal limits or range of custody which the conviction has authorized the State to impose.'" *Arce*, 139 F.3d at 333-34 (quoting *Sandin*, 515 U.S. at 484); *see Sandin*, 515 U.S. at 479 n.4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences") (citation and internal quotation marks omitted).

State statutes and regulations also confer liberty interests on prisoners. *Arce*, 139 F.3d at 334. A prisoner's confinement or restraint violates a state liberty interest if it "imposes [an] atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin*, 515 U.S. at 484).

With respect to the contact visits at issue in this case, courts in the Second Circuit have consistently held that neither the Due Process Clause nor New York state law create a protected liberty interest for inmates with respect to contact visits. *Baskerville*, 1998 WL 778396, at *6 (dismissing Section 1983 claims under Fifth and Fourteenth Amendments for deprivation of contact visits because "contact visits of prison inmates are a privilege for inmates, not a right, and thus do not give rise to a liberty interest protected by the due process clause"); *Mateo v. Heath*, No. 11 Civ. 636 (LAP), 2012 WL 1075836, at *3 (S.D.N.Y. Mar. 29, 2012) (same); *Zimmerman v. Burge*, No. 06-CV-0176 (GLS)(GHL), 2008 WL 850677, at *2 (N.D.N.Y. Mar. 28, 2008) (finding that "there is abundant case law establishing that inmates have no liberty or property interest in contact visits" under the Due Process Clause or New York law); *Saxon v. Goord*, No. 06-CV-0826, 2007 WL 1695582, at *4 (W.D.N.Y. June 7, 2007) ("It is well-established that contact visits are a *privilege* for inmates, not a *right*.") (emphasis in original). This Court finds the analysis contained in these cases to be persuasive. Their logic follows from the Supreme Court's holding in *Overton v. Bazzetta*, 539 U.S. 126 (2003), which found that "'[a]n inmate does not retain rights inconsistent with proper incarceration,' and that 'freedom

4

of association is among the rights least compatible with incarceration.'" *Mills v. Fischer*, No. 09-CV-0966A, 2010 WL 364457, at *2 (W.D.N.Y. Feb. 1, 2010) (quoting *Overton*, 539 U.S. at 131).

Moreover, even if there were a protected liberty interest in plaintiff's contact visits, the facts alleged in the complaint clearly demonstrate that defendants were well within their discretion to restrict plaintiff's visitation privileges. "The evaluation of whether or not [visitation privileges] should be granted to a prisoner once he is in a facility that has developed such a program is committed to the considered judgment of prison administrators, who are actually charged with and trained in the running of the particular institution under examination." *Hernandez v. Coughlin*, 18 F.3d 133, 138 (2d Cir. 1994) (internal quotations omitted) (citing *Olone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 562 (1979) ("[e]nsuring security and order at the institution is a permissible nonpunitive objective" sufficient to justify restrictions on prisoners)). As the Supreme Court held in *Bell*, prison officials have wide latitude "to take appropriate action to ensure the safety of inmates and corrections personnel." 441 U.S. at 547. Here, by his own admission in the complaint, plaintiff was involved in at least two violent altercations with another inmate, the second of which actually occurred on the visitation floor. Plaintiff also alleges that his contact visits were restricted after that second altercation occurred; the locus of his complaint against defendants is that the second altercation only occurred because defendants negligently precipitated the fight by bringing Johnson to the visitation floor when plaintiff was there, despite the institution of a "keep separate" order. Notwithstanding this purported error, on the face of plaintiff's complaint, he admits to being involved in these incidents of violence, including one incident on the visitation floor when other inmates and their outside visitors were apparently present, and only disclaims responsibility for initiating one of the altercations. Therefore, as discussed above, given the discretion granted to prison officials to maintain order and safety at the institution, plaintiff alleges no facts that would support a plausible claim that defendants somehow acted arbitrarily or without purpose in restricting his contact visits. *See id.* at 548 n.29 (finding that the body of the Supreme Court's precedent regarding restrictions on convicted inmates and pretrial detainees reflects that "courts should defer to the informed discretion of prison administrators because the realities of running a corrections institution are complex and difficult, courts are ill equipped to deal with these problems, and the management of these facilities is confided to the Executive and Legislative Branches, not to the Judicial Branch.").[5]

Therefore, the Court finds that plaintiff has failed to state a plausible claim under Section 1983, because the alleged injury caused by defendants does not affect a right, privilege, or immunity protected by the Due Process Clause or New York law. The motion to dismiss is granted in its entirety.

IV. LEAVE TO AMEND

Having concluded that plaintiff has failed to state a plausible claim under Section 1983, the Court has considered whether he should be afforded an opportunity to amend his complaint. The Second Circuit instructs that

---

[5] Furthermore, plaintiff appears to assert in his opposition that, even though his contact visits were taken away for some undefined period, he is still allowed "booth visits" with his family, though he cannot "touch, hold, or kiss" his family when they visit him. (Pl.'s Opp. at 5.) His ability to visit with family members, therefore, appears not to have been totally abridged, only limited.

a district court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotation omitted). Nevertheless, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of New York* , 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).

Though mindful of the plaintiff's *pro se* status, the Court finds that any attempt to amend the complaint would be futile. Here, the deficiencies in plaintiff's claim are substantive in nature and, as such, cannot be remedied by amendment. Accordingly, the Court declines to grant plaintiff leave to file an amended complaint.

## V. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss and dismisses the Section 1983 claim with prejudice. The Clerk of the Court shall enter judgment accordingly and close the case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: July 8, 2015
Central Islip, NY

\*\*\*

Plaintiff proceeds *pro se*. The defendants are represented by Pablo Fernandez of the Nassau County Attorney's Office, One West Street, Mineola, NY 11501.